IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


JAMIE A. REYES,                    )
                                   )
            Plaintiff,             )
                                   )
                 v.                )      Civil Action No. 08-847
                                   )
AUTOZONE, INC., MIKE               )
ELLIOTT, GENE JOHNSON, and         )
BILL WHITED                        )
                                   )
            Defendants.            )



MEMORANDUM and ORDER


Mitchell, M.J. :

        Presently before the court is Defendants', AutoZone,

Inc.("AutoZone"), Mike Elliott, Gene Johnson, and Bill Whited,

motion for summary judgment as to Plaintiff, Jamie Reyes's

("Reyes") claims for race, national origin, and age discrimination,

hostile work environment, constructive discharge, and retaliation

in violation of Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in

Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., the Civil

Rights Act of 1866,   42 U.S.C. §1981 ("Section 1981"), the

Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S. § 951 et

seq.[1]  Reyes also alleges that the individual defendants, Elliott, Johnson, and White, aided and abetted AutoZone's violations of the PHRA.  For the reasons set forth below, the motion for summary judgment (Docket No. 31) will be granted as to all defendants.

Under Fed.R.Civ.P.56 (c), "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law[,]" summary judgment should be granted.  The threshold inquiry is whether there are any

---

[1]
In the introductory paragraph of his complaint, Reyes states that he is also advancing claims under the Pennsylvania Equal Rights Amendment and "any other federal and state laws prohibiting the conduct alleged herein by defendants." Pl.'s Compl. ¶ 1.  Reyes, however, fails to allege any facts supporting a cause of action under the Equal Rights Amendment or any other unnamed state or federal laws in the enumerated counts of the complaint. This passing reference to the Pennsylvania Constitution and other laws, without facts to assess the substantiality of a cause of action arising under thereunder,  does not satisfy the pleading requirements of Fed. R. Civ P. 8. <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544, 555 (2007)(complainant must make factual showing of entitlement to relief by alleging sufficient facts that, taken as true, suggest required elements of  particular legal theory).

In any event, there is considerable dispute as to whether there exists a private cause of action under the Pennsylvania Equal Rights Amendment.  To date, the Pennsylvania Supreme Court has not adjudicated this issue and district court opinions on this issue are mixed.  <u>See</u> <u>E.E.O.C. v. Smokin' Joe's Tobacco Shop, Inc.</u>, No. 06-1758, 2007 WL 1258132, at *11 (E.D.Pa. April 27, 2007) and cases cited therein.

genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250(1986). A court may grant summary judgment if the non-moving party fails to make a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322(1986). In making this determination, the non-moving party is entitled to all reasonable inferences. Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008).

If the moving party meets its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue for trial. The party opposing summary judgment must set forth, "by affidavits or as otherwise provided in this rule," specific facts showing that there is a genuine issue for trial and "may not rest upon the mere allegations or denials of the ... pleading." Saldana v. Kmart Corporation, 260 F.3d 228, 232 (3d Cir. 2001)(citing Fed.R.Civ.P. 56(e); Matsushita Electric Industrial Company, Ltd., v. Zenith Radio Corporation, 475 U.S. 574 (1986); See also Fireman's Insurance Company of Newark, New Jersey v. DuFresne, 676 F.2d 965, 969 (3d Cir.1982) (Fed.R.Civ.P. 56(e) does not allow party opposing summary judgment to rely merely upon bare

assertions, conclusory allegations, or suspicions).  A court may not, however, make credibility determinations or weigh the evidence in making its determination.  Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 133, 150(2000).

> A.  Factual and Procedural History

AutoZone operates retail auto parts stores and sells to both commercial and walk-in customers.  Reyes, a Hispanic male of Chilean origin, was hired by AutoZone in the spring of 1997 as a lead Commercial Specialist ("CS") and was eventually assigned to store #1217 located in South Florida.  As the position title indicates, a CS services commercial customers and deliveries.  In store #1217, Reyes worked fifty hours a week, ten of which were considered overtime hours.

In late 2000, Reyes's request for a transfer to Western Pennsylvania was approved by AutoZone and, in January 2001, Reyes began work as a Parts Sales Manager ("PSM") at store # 1811 in Rochester, Pennsylvania.  In contrast to the fifty-hour week worked by Reyes in Florida, the PSM position in Rochester required only forty hours per week.  Because of the loss of working hours, AutoZone considered Reyes's transfer to be a voluntary demotion. Reyes remained in the PSM position in Rochester until May of 2001 when he resigned to take employment with a competitor.  Reyes also worked as a school bus driver for Student Transportation of America

4

("STA") from September 2003 to February 2007, except for a period between the summer and winter of 2004.

In April 2004, Reyes was rehired by AutoZone at store #1811 as a CS.  An employee senior to Reyes, Eric Logan, also functioned as a CS at that store.  In September 2004, Gene Johnson, store 1811's manager, returned from a medical leave to discover that the commercial sales at the store were declining and that at least four different commercial customers had lodged verbal complaints against Reyes.  Johnson Decl., App. to Defs.' Mot. For Summ J., Ex 3.[2]

---

[2]

Reyes contends that the Declarations of Mike Elliott, Jason Jerome, Bill Whited, and Gene Johnson, were improperly presented in support of the their motion for summary judgment because they are self-serving affidavits representing an attempt to interject inadmissible evidence into the proceeding.

Under Fed.R.Civ.P. 56 (e), a supporting affidavit must be made on personal knowledge based upon facts that would be admissible at trial by a person competent to testify on the matter at hand.  Reyes has not shown that the declarations offered by the defendants are deficient in any of these requirements and they will be considered to the extent that they are uncontradicted. See also U.S. v. 225 Cartons, More or Less of an Article or Drug, 871 F.2d 409, 414 n.4 (3d Cir.1989)(declarations filed under penalty of perjury satisfy the affidavit requirement of Rule 56(e)).

It is also noted that in Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156 (3d Cir. 2009), the case relied upon Reyes to support his argument that the defendants' evidence is incompetent, the Court of Appeals for the Third Circuit admonished against the non-moving party's use of conclusory pleadings.  "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing

During this same time period, Johnson was informed by his supervisor, Bill Whited, that a corporate level decision was made to eliminate Outside Sales Representative "(OSR") positions and that Johnson was expected to absorb OSR Donnie Calvert, an over fifty-year-old, white male, into the commercial department at store #1811.  Due to the mandate to place Calvert in a management level position, Johnson and Whited decided to move Reyes to a PSM position to make room for Calvert.   Although Reyes's salary remained the same, he considered the move to a PSM as a demotion.

In July 2005, Reyes requested a transfer to the new AutoZone store #3273 in Aliquippa, Pennsylvania. Reyes wanted the transfer because store # 3273 was closer to his home and he was interested in a CS position.  Store #3273 did not have an operating commercial department at the time of its opening, however, the store manager, Mike Elliott, told Reyes he would keep him in mind if and when a CS position became available.  Accordingly, when Reyes was transferred to store #3273, it was as a PSM .

William Blue, a thirty-eight-year old white male, was also hired at store #3273.  While Reyes contended that Blue was

_____

a genuine issue for trial." Id. at 161 (quoting Fed.R.Civ.P. 56(e)(2)).

hired as a CS, both Elliott and Whited testified that Blue was hired as a PSM.  Blue was more experienced than Reyes and also held an Automotive Service Excellence ("ASE") certification.   An ASE certification is not a requirement for a CS position with AutoZone, but certified employees are preferred.   AutoZone offers some training to facilitate the ASE certification process in the form of study materials and a sample test, but, does not provide employees on-the-clock study time, nor does it offer the certification test on its premises.  Reyes attempted to obtain an ASE certification, but he never earned the accreditation.

Beginning in late 2005 and into early 2006, Reyes alleges that Elliott began to unreasonably criticize his work performance. Reyes complained to AutoZone's Human Resources Department and to Whited about Elliott's alleged harassment.

Around this same time, Reyes penned two letters outlining his vision of his future at AutoZone.  On January 13, 2006, Reyes wrote that in both in an effort to save AutoZone some money and to satisfy his obligations to  creditors, he would be willing to work a reduced schedule of thirty-two hours.  Later, on January 21, 2006, as part of an employee self-evaluation process, Reyes indicated that his goal was to hold a CS position and to receive continued promotions throughout the corporation.

In February 2006, Jay Spray ("Spray"), a thirty-three-

year-old white male, was hired as a CS at store #3273.  Spray had previously been working in a comparable position with a competitor in the area and was ASE-certified.  The CS at store #3273 worked forty hours a week, usually from 8:00 a.m. to 5:00 p.m.  On occasion, the CS was expected to work as early as 7:00 a.m. or as late as 7:00 p.m., but, not more than forty hours in a given week.

In the spring of 2006, Reyes requested a transfer to the AutoZone store in Kent, Ohio, near to where his fiancé was offered a job.  Elliott informed Whited of Reyes's request and Whited, in turn, contacted AutoZone's Human Resources Department and the Ohio store manager communicating Reyes's interest in a CS position. Reyes was offered the position, but a few days before the transfer was to be effective, Reyes informed Whited that he could not accept the position in Ohio. Reyes remained as a PSM at store #3273.

In April 2006, Elliott was promoted and was no longer involved in personnel decisions relative to store #3273.  In July 2006, store # 3723's new manager, Jason Jerome ("Jerome"), removed Spray from the CS position because of declining sales.  Whited suggested that Jerome move Michael Dock, a twenty-five-year-old white male, from a PSM position to the CS slot vacated by Spray.

On or about August 2, 2006, Reyes resigned from AutoZone. On November 6, 2006, Reyes filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the

Pennsylvania Human Relations Commission ("PHRC").  The charge was dismissed and Reyes was issued a Right to Sue letter on April 16, 2008.  On June 20, 2008, Reyes filed the instant lawsuit alleging age, race, and national origin discrimination by AutoZone.

### B.  Time-Barred Claims

Under Title VII and the ADEA, a discrimination charge must be filed with the EEOC "within 180 days after the alleged unlawful employment practice occurred."  42 U.S.C. §2000e-5(e)(1); 29 U.S.C. § 626 (d)(1)(A).  When the claimant also lodges a complaint with a companion state agency, in this instance, the PHRC, the filing period before the EEOC is extended to 300 days from the time of the employment practice.  Ruehl v. Viacom, Inc., 500 F.3d 375, 382-83(3d Cir. 2007).  A claim under the PHRA must be brought within 180 days of the alleged act of discrimination.  43 P.S. § 959 (h).  The period within which administrative claims must be filed is akin to a statute of limitations; therefore, alleged discriminatory activity occurring beyond the filing period generally is not actionable.  National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 120 (2002).

Reyes filed his claims with the EEOC and the PHRC on November 6, 2006.  As such, only those practices allegedly unlawful under Title VII or the ADEA which occurred within the prior 300 days, or after January 10, 2006, are actionable.  For a claim to

remain viable under the PHRA, the complained-of discrimination must have occurred after May 10, 2006.  Under these date constraints, the following of Reyes's claims are time-barred: 1) Title VII, ADEA, and PHRA claims related to Reyes's alleged demotion in November 2004 when he was moved to the PSM position at store #1811; 2) Title VII, ADEA, and PHRA claims concerning Blue's alleged promotion (over Reyes) in the summer of 2005 ; and, 3) PHRA claim that he was denied a promotion in 2006 when Spray was hired in the CS position.  What remains to be adjudicated are Reyes's: 1) Section 1981 claim[3] that he was unfairly demoted from CS to PSM in November 2004; 2) Section 1981 claim that Blue was unjustifiably selected as a CS over him; 3) Title VII, ADEA, and Section 1981 claims related to Spray's selection as a CS; and, 4) Title VII, ADEA, Section 1981, and PHRA claims regarding Dock's selection as a CS in July 2006.

In addition, Reyes's complaint that AutoZone's discriminatory conduct created a hostile work environment is not completely defeated by application of the relevant statutes of limitations.  In Morgan, the Supreme Court distinguished between discrete acts of unlawful discrimination which must be brought

---

[3]

Reyes's claims under the 1991 amendments to Section 1981, based on acts occurring after the formation of a contract, are subject to a four-year statute of limitations. 28 U.S.C. § 1658(a).  Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004).

within the requisite limitations period and those acts that, although time-barred, may be aggregated to make out a hostile work environment claim. Id. at 113-115. Relevant to Reyes's particular claims, the Court of Appeals for the Third Circuit has identified demotion, failure to promote, and wrongful discipline as distinct acts of discrimination and observed that such "' discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges.'" O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006)(quoting Morgan, 536 U.S. at 113). However, an employee can raise a legitimate hostile work environment claim when he contends that the workplace discrimination was pervasive and that the cumulative effects of individual acts provide the basis for the claim. Morgan, 536 U.S. at 115.

Applying the Morgan rubric to Reyes's allegations, his claims that his was demoted in November 2004 and that he was denied promotions in 2005 and February of 2006 are discrete acts which occurred outside the applicable limitations period and cannot be aggregated to defeat their untimeliness. Reyes's hostile work environment claim based upon the alleged harassment of the AutoZone management triumvirate of Whited, Elliott, and Johnson, however, does not suffer a similar fate as it conceivably complains of repeated discriminatory conduct permeating the workplace.

11

Accordingly, Reyes's hostile work environment claim, limited to the allegation of continued harassment because of his race, national origin, and/or age, is not time-barred.

### C. November 2004 Demotion - Section 1981

Reyes argues that he was demoted in November 2004 when he was moved from a CS position to a PSM at store #1811 to accommodate a corporate edict that the store place Calvert in a management level position.

The elements of a Section 1981 claim are generally identical to the elements of an employment discrimination case under Title VII. Brown v. J. Kaz, Inc., 581 F.3d 175, 182 (3d Cir. 2009). The McDonnell-Douglas Corporation v. Green, 411 U.S. 792 (1973) burden-shifting framework is applicable to racial discrimination claims under section 1981. Stewart v. Rutgers, The State University, 120 F.3d 426, 432 (3d Cir. 1997). In order to establish a prima facie case, Reyes must show that (1) he was a member of a protected class; (2) he satisfactorily performed the duties of his position in conformity with the employer's expectations; (3) he suffered an adverse employment action (demotion); and, (4) the circumstances surrounding the adverse employment action infer discriminatory activity, either by showing more favorable treatment to someone outside the protected class or otherwise. Coleman v. Blockbuster, Inc., No. 05-4506, 2008 WL

2622912, at *4, n.6 (E.D. Pa. June 30, 2008); <u>Sarullo v. United States Parcel Service</u>, 352 F.3d 789, 797 (3d Cir. 2003). If Reyes satisfies his burden, the onus shifts to AutoZone to articulate a legitimate, nondiscriminatory reason for its employment action. If the employer satisfies its burden, then Reyes must demonstrate that AutoZone's proffered reason for the employment decision is pretextual. <u>Id</u>.

As an Hispanic male of Chilean origin, Reyes can demonstrate that he is a member of a protected class. Regarding the adverse employment action, Reyes contends that his change of status from CS to PSM in November was a demotion because: (1) his schedule and job responsibilities changed significantly; (2) his pay rate was affected because he was no longer eligible for overtime pay; (3) his shirt color changed; and, (4) the change to PSM was not a lateral move because the CS position was a higher level management position.

An adverse employment action involves activity by an employer "that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." <u>Storey v. Burns International Security Services</u>, 390 F.3d 760, 764 (3d Cir. 2004)(citation omitted). Lateral transfers, changes of title, and different reporting relationships, generally do not constitute adverse employment actions. <u>Langley v. Merck &</u>

Company, Inc., 186 Fed. Appx. 258, 260 (3d Cir. 2006).

AutoZone disputes that Reyes's move to PSM was a demotion.  It cites to the evidence that Reyes's pay did not change, that the corporation did not consider a PSM position to be less prestigious or a "step down" from a CS position, and that the PSM position can sometimes actually pay more than the CS position.

The major factual disputes concern the parties' versions on the pay difference and the various job responsibilities of a CS versus a PSM.  As to AutoZone's other contentions, its statement that a PSM may sometimes receive higher compensation than a CS is irrelevant.  Also, AutoZone's position that there was no distinction in the classification of the positions is somewhat disingenuous because Whited admitted in his declaration that the only management positions available at store #1811 were the CS jobs.  However, the changed level in supervisory title would not, standing alone, qualify as a demotion sufficient to demonstrate an adverse employment decision.  Other than the semantical difference between "supervisory" and "management," Reyes offers no objective evidence  that the PSM position was less prestigious.  See DiCampli v. Korman Communities, 257 Fed.Appx. 497, 501 (3d Cir. 2007)(change of position offering identical pay and benefits without objective evidence that position was less prestigious does not constitute adverse employment action).

As for the compensation issue, Reyes admits that his pay rate did not change, but claims that a CS was guaranteed ten hours of overtime, an opportunity not available to a PSM.  Johnson testified to the contrary, stating that the back-up CS worked a forty-hour week.  Whited informed in his deposition that although at an earlier time in AutoZone history CS personnel did receive overtime, that policy was not in effect in November 2004.  Even viewing the evidence concerning a CS's eligibility for overtime pay favorably to Reyes, he offers no evidence showing that, by virtue of his changed position to PSM, he lost the opportunity for overtime compensation other than his unsupported assertions to that effect.

Reyes also offers that he was demoted in November 2004 because the move to PSM represented a significant change in schedule.  According to Reyes, as a CS, he worked Monday through Friday with most weekends off.  As a PSM, however, he worked forty hours a week, but did not have a consistent schedule or weekends off.

The Court of Appeals for the Third Circuit has determined that "assigning an employee to an undesirable schedule can be more than a 'trivial' or minor change in the employee's working conditions."  Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 788 (3d Cir.1998)(citation omitted).  The Court then concluded that

15

a change from early/late shift work to a fixed, normal workday schedule could constitute an adverse employment action if it constituted a change in the "terms, conditions, or privileges of employment." Id. at 788. While Reyes's complaints of lost pay, change in supervisory status and shirt color, and alterations of job responsibilities fall short of creating a genuine issue of fact as to whether he was demoted in November, his charge that the unpredictable PSM schedule created a negative change to the terms of his employment fulfills his burden at this summary judgment level that he suffered an adverse employment action.

The third element of proof of the prima facie case requires that Reyes demonstrate that he satisfactorily performed the duties of the CS position consistent with AutoZone's expectations. Johnson testified that when he returned as store manager in September 2004, he discovered that commercial sales had declined.  He also received four verbal complaints in  one month period from commercial customers regarding Reyes's demeanor.  The customers related that Reyes was "rude, short on the telephone, and difficult to understand."  Johnson Decl., App. to Defs.' Mot. For Summ J., Ex 3.  Johnson testified that he discussed the complaints with Reyes and advised him on ways to address the customers' misgivings.  Although Reyes was responsive to the coaching and, initially, his customer relations skills improved, Johnson claimed

16

that further discussion on the problem was required.

Despite the allegations of declining sales and customer dissatisfaction, Johnson admitted that "[t]he mandate that I place Mr. Calvert in a position in the Commercial Department was the main reason I moved Mr. Reyes from the backup CS to the PSM position." Id. at 2.  Thus, while there may have been issues with Reyes's job performance at the CS position, AutoZone only removed Reyes from the position when it was ordered to make room for Mr. Calvert. Viewing this evidence favorably to Reyes, it can be concluded that, despite his shortcomings with customer contact, he was performing the job adequately at the time of the employment decision.

Finally, as to the prima facie case, Reyes must present evidence that creates a genuine issue of fact that the circumstances of his move from CS to PSM gave rise to an inference of discrimination.  Pivorotto v. Innovative Systems, Inc., 191 F.3d 344, 352-54 (3d Cir. 1999).  The customary way for a plaintiff to raise a discriminatory inference is by evidence that he was treated differently from other similarly situated employees. Coleman, 2008 WL 2622912 at *4.  Reyes's offering that he was demoted and Calvert, a white man outside the protected class, was given the CS job would create an inference of discriminatory activity related to the November 2004 employment.

Having established a prima facie case, the burden shifts

17

from Reyes to AutoZone to proffer evidence sufficient to support a
finding that it had a legitimate, nondiscriminatory reason for the
employment decision.  <u>Fuentes v. Perskie</u>, 32 F.3d 759,763 (3d Cir.
1994).  AutoZone lists three reasons for its decision regarding
Reyes's change in job status, highlighted first by the necessity to
absorb Calvert into a management level position at store #1811.
Second, AutoZone claims that it was in the company's best interest
to retain Eric Logan in a CS position because of his longstanding
relationship with the commercial customers in the area.  Third,
AutoZone offers that moving Reyes to the PSM position would address
the customer complaints lodged against him.

These considerations satisfy AutoZone's burden to advance
a legitimate reason for the unfavorable employment decision.  The
burden now rebounds to Reyes to show by a preponderance of the
evidence that AutoZone's explanation is pretextual.  <u>Id</u>. at 763.
Reyes must submit evidence that "(1) casts sufficient doubt upon
each of the reasons proffered by the defendant so that a factfinder
could reasonably conclude that each reason was a fabrication; or
(2) allows the factfinder to infer that discrimination was more
likely than not a motivating or determinative cause of the adverse
employment action."  <u>Id</u>. at 762.

Reyes challenges each of the proffered reasons for his
move to PSM as follows: Calvert did not perform the job of a CS

18

when he started working at store #1811, Logan's value as an employee did not factor into AutoZone's decision to retain him as a CS, and that Johnson did not receive complaints from customers as to his job performance.   Reyes, however, does not offer any evidence in support of any of these counter-allegations and, therefore, has not cast sufficient doubt on AutoZone's proffered legitimate reasons to defeat summary judgment.

Reyes has also failed to identify evidence that would allow a reasonable factfinder to conclude that discrimination was more likely than not a determinative factor in his move to PSM.   In fact, the only allegation Reyes makes in this regard occurs in his brief where he characterizes the customers' complaints about him as an attack on his accent and enunciation.   Again, though, Reyes does not identify any record evidence that anyone from AutoZone made any type of disparaging remark, or engaged in any conduct that could be perceived as discriminatory.   The mere fact that AutoZone noted and responded to customers' complaints that Reyes was difficult to understand is not sufficient to show that his race or national origin was a motivating factor for its adverse employment decision.

D.   <u>Failure to Promote</u>

Reyes also contends that he was discriminated against because of his race, national origin and/or age in connection with the three instances when he alleges that he did not receive a

19

promotion to a CS.  As noted, some of Reyes's claims on this issue
are time-barred under some of the statutes.  However, regardless of
which theory of statutory recovery remains viable, i.e., Title VII,
42 U.S.C. § 1981, and/or the PHRA, the same legal standard applies
to all of these claims, that of the already-described <u>McDonnell
Douglas</u> burden-shifting framework.  <u>Williams v. Rohm and Haas
Company</u>, 90 Fed.Appx. 627, 628-629( 3d Cir. 2004).  To show that he
was unjustifiably denied a promotion, Reyes must establish that he
was: (1) a member of the protected class; (2) qualified for the CS
position he sought; and,(3) nonmembers of the protected class were
treated more favorably. <u>Goosby v. Johnson & Johnson Medical, Inc.</u>,
228 F.3d 313, 318-19 (3d Cir. 2000).  The ADEA mirrors these
statutes as to the prima face burden and requires the plaintiff
alleging a failure to promote action due to age to show  that he
belongs to the class protected under the ADEA, he applied for and
was qualified for the promotion, and despite his qualifications,
was  rejected,  and  the  refusal  to  promote  occurred  under
circumstances  which  give  rise  to  an  inference  of  age
discrimination.  <u>Barber v. CSX Distribution Services</u>, 68 F.3d 694,
698 (3d Cir. 1995).

     1.  <u>William Blue - Store # 3273</u>[4]

    In July 2005, Reyes requested and was granted a transfer

---

[4] This claim proceeds under Section 1981.

to a new store opening in Aliquippa, Pennsylvania (Store # 3273).
In an interview with Elliott, Reyes indicated that he was
interested in a CS position, but, at the time of store # 3273's
opening, there was not an operating commercial department.  Reyes
was therefore hired as a PSM.  Around this same time, William Blue,
a thirty-eight-year old white male was hired as a sales person at
store #3273.  Reyes argues that Blue was hired as a CS and that his
hire represents the first time that Reyes was denied a promotion to
a CS.  According to Elliott and Whited, however, Blue was hired as
a PSM and that Jay Spray, who was hired in February 2006, was the
first to hold a CS position at store #3273.

        In addition to the testimony of Elliott and Whited,
AutoZone has submitted four documents related to Blue's employment
history with AutoZone, only one of which definitely identifies Blue
as a PSM.  The other documents are either silent or vague as to
Blue's exact job title.  Nonetheless,  Reyes submits only his
opinion, without any factual basis, that Blue was hired as a CS.
Because there is absolutely no evidence that Blue was hired as a
CS, Reyes cannot pursue an argument that he was passed over for a
promotion by virtue of Blue's hiring.

        2.  <u>Jay Spray - Store # 3273</u>[5]

---

        [5]

        This claim of discrimination based on failure to
        promote proceeds under Title VII, Section 1981, and the
        ADEA.

In February 2006, Jay Spray was hired as a CS at store # 3273.  To reiterate, for Reyes to present a prima facie case that Spray's hire over him as a CS violated Title VII and section 1981, he must show that he was (1) a member of the protected class; (2) qualified for the CS position he sought; and,(3) nonmembers of the protected class were treated more favorably. Goosby, 228 F.3d at 318.

It is assumed that Reyes can meet his initial burden under all relevant statutes, so the burden shifts to AutoZone to explain why Spray was legitimately promoted over Reyes.  Whited testified that he and Elliott chose Spray over Reyes because Spray had experience in this position, albeit with a competitor, was knowledgeable regarding the commercial customers in the area, and was ASE-certified.  AutoZone management also did not consider Reyes for the CS position because Reyes had communicated to Elliott that he would need to work at least fifty hours in order to be able to afford to give up his other part time job as a bus driver.  The CS position at store #3273 was a forty-hour position.  Finally, AutoZone continued to receive complaints from customers regarding Reyes's demeanor and attitude and these complaints weighed as a factor against his suitability for the CS position.

Reyes acknowledges that Spray was ASE-certified, but offers his opinion that his "hustle" proved that he was more qualified that Spray.  Second, Reyes does not deny that he informed

Elliott that he needed to work fifty hours in order to quit his
other job or that the CS position at store #3273 was a forty-hour
job.  These admissions cannot be reconciled with Reyes's contention
that he was available to work as a CS.  If Reyes needed to work
fifty hours and the CS position only required forty hours, then
Reyes could not have given up his second job.  Third, without
support, Reyes disputes that customers complained about him.

For its lack of substantiation and inherent
inconsistency, Reyes's rebuttal evidence would not permit a
reasonable factfinder to conclude that AutoZone's reasons for
selecting Spray over Reyes for the CS position were unworthy of
credence.

Reyes argues in the alternative that a comment made by
Elliott in response to Reyes's inquiry as to why he was not
selected as a CS suggests that race and/or national origin
discrimination was a motivating cause of the adverse employment
action.  On two occasions, once when Reyes asked Elliott why he was
not selected for the CS position and sometime later, during an
employee evaluation, Elliott stated that "things are done
differently here than in South Florida." (Pl.'s Dep. at 108, 111-
12, November 14, 2008).

Even under sensitive scrutiny, Elliott's reference to
South Florida would not countenance a conclusion that Reyes was
discriminated against because of race and/or national origin.

Reyes himself does not link the statement to discriminatory animus and a reasonable factfinder would most likely conclude that the comment was a reference to the geographic locale of Reyes's former employment with AutoZone.   Therefore, Reyes has failed to demonstrate that a discriminatory reason motivated AutoZone's employment decision.

  3. <u>Michael Dock - Store # 3273</u> [6]

  In the spring of 2006, Reyes requested, but then turned down, a transfer to the AutoZone store in Kent, Ohio.   Reyes remained as a PSM at store #3273.

  In July 2006, store # 3723's new manager, Jason Jerome removed Spray from the CS position because of declining sales. Whited suggested that Jerome move Michael Dock, a twenty-five-year old white male, from a PSM position to the CS slot vacated by Spray.   Reyes contends that Dock's promotion was an employment decision adverse to him and was reasoned by discrimination.

  It will be assumed again that Reyes can make out a prima facie case of discrimination under all the relevant statutes; thus, the query is focused on the criteria AutoZone purports it utilized for selecting Dock over Reyes.   Whited believed Dock to be an attractive candidate for the CS position because, although he was

_____

[6]
  This claim proceeds under Title VII, Section 1981, the ADEA and the PHRA.

not ASE-certified, he had experience working in area repair shops, had existing relationships with commercial customers, and had demonstrated sales ability.  Whited testified that the factors militating against Reyes's selection for the CS position were his history of requesting transfers, rescinding an approved transfer, and leaving the company.  He also considered that Reyes's commitment to his part-time bus driving job would not allow him to work the hours required of a CS.

Jerome did not view Reyes as well-suited for the CS job because some commercial clients had complained about Reyes's superior attitude and felt that Reyes's was more effective when dealing with "walk-in," less knowledgeable customers.  In contrast, Jerome noted Dock's communication skills, his reputation as a team player, and his good relationships with commercial customers. Jerome further informed that Dock's placement in the CS position resulted in the doubling of the store's commercial business.

Reyes's response to AutoZone's proffered rationale for Dock's selection as a CS suffers the same deficiencies as his prior counter-attacks.  He simply denies that AutoZone's concerns about his suitability for the CS position were meritorious or that Dock was a superior candidate for the position.  The only nuance in the rebuttal evidence is that Reyes now states that he would have been willing to give up his other job if he had been awarded the CS position.  Even accepting that Reyes communicated to AutoZone that

he was willing to relinquish his other employment and only work forty hours at the CS position, Reyes's perceived inability to assume the CS position was only one reason why he was not chosen for the CS position.  Also, misinterpretation of Reyes's working hour's requirement would not suffice to discredit AutoZone's reason for its employment decision.  Reyes "cannot simply show that an employer's decision was wrong or mistaken, since the factual issue is whether a discriminatory animus motivated the employer, not whether the employer is 'wise, shrewd, prudent, or competent.'"  Brewer v. Quaker State Oil Refining Corporation, 72 F.3d 326, 331 (3d Cir. 1995) (quoting Fuentes, 32 F.3d at 765).

For these reasons, Reyes's claim that he was denied promotions for discriminatory reasons cannot survive summary judgment.

E.  Hostile Work Environment

Reyes must prove five elements to establish a prima facie hostile work environment case: (1) he suffered intentional discrimination, (2) that was severe and pervasive, (3) the discrimination detrimentally affected him, (4) the discrimination would have a similar effect on a reasonable person of the same protected class in that position, and (5) the existence of respondeat superior liability.  Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001).  Factors indicative of the presence of a hostile work environment include "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

As noted, Reyes's hostile work environment claim is primarily based upon the alleged harassment by Elliott's continued nitpicking of Reyes's job performance.[7]  As evidence, Reyes refers to an incident occurring on October 22, 2005, when he received a verbal warning from Elliott when he took home a set of store keys. Reyes received a written warning a few days later when he again left the AutoZone premises with the store keys.  Reyes also recalled that Elliott complained that some of Reyes's planograms, a type of merchandising display, were not perfectly assembled, that Reyes neglected to place a liner in a trash receptacle, and asked Reyes to continue to order and store unnecessary catalogs.  Reyes then discovered that Elliott documented Reyes's work activity in a notebook. When Reyes discussed his work performance with Elliott, Reyes claims that Elliott responded with the aforementioned comments

---

[7]
    The hostile work environment claim leveled against Whited appears to be limited to his failure to respond to Reyes's complaints about Elliott.  There is no detailing of Johnson's contribution to the hostile work environment, except to the extent that he moved Reyes to the PSM position to make room for Calvert. Neither assertion would support a hostile work environment claim that could survive summary judgment.

27

about store policies in Pennsylvania differing from those in South Florida.  Reyes testified that he complained to AutoZone's Human Resources Department and to Whited about Elliott's exaggerated critique of his work, but admits that he never alleged that Elliott's quibbling was due to Reyes's age, national origin, or race.

Reyes's allegations of workplace harassment do not rise to the level of a hostile work environment.  First, there is no evidence of pervasive bad conduct.  Second, even characterizing Elliott's hyper-vigilance of Reyes's job performance as unwarranted, it hardly constitutes evidence of a "workplace permeated with 'discriminatory intimidation, ridicule, and insult.'"  Amati v. U.S. Steel Corporation, No. 04-1442, 2007 WL 3256850, *16 (W.D.Pa. November 2, 2007)(citation omitted).  Third, there is no evidence that Elliott's criticisms and write-ups were motivated by discrimination as the "South Florida" reference has already been determined to be content neutral.

F.   Constructive Discharge

To establish a constructive discharge claim an employee must demonstrate that the employer knowingly permitted conditions of discrimination in the workplace "so intolerable that a reasonable employee would be forced to resign."  Levendos v. Stern Entertainment, Inc., 860 F.2d 1227, 1232 (3d Cir. 1988)(citation omitted).  An employee's subjective perceptions of unfairness or

harshness do not govern a claim of constructive discharge. <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1083 (3d Cir. 1992). Instead, the focus is on the reasonable person, <u>Clowes v. Allegheny Valley Hospital</u>, 991 F.2d 1159, 1162 (3d Cir.1993), and courts employ an "objective test to determine whether an employee can recover on a claim of constructive discharge." <u>Duffy v. Paper Magic Group</u>, 265 F.3d 163, 167 (3d Cir. 2001).

Courts can consider a number of factors as indicative of constructive discharge: (1) a threat of discharge; (2) suggestions or encouragement of resignation; (3) demotion or reduction in pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; (6) unsatisfactory job evaluations. <u>Clowes</u>, 991 F.2d at 1161.

Reyes contends that he was constructively discharged when he was not promoted to a CS position at store #3273. To prove his theory, Reyes must show that he did not receive the CS position due to either his race, national origin, or age, and that the failure to be awarded the position created such an intolerable situation that he was forced to resign. <u>Rager v. United Parcel Service, Inc.</u>, No. 07-617, 2008 WL 4861447, *6 (W.D.Pa. November 7, 2008).

Because it has already been decided that Reyes has not provided sufficient evidence to support his claim that the employment decisions concerning the CS position at store #3723 could sustain claims for race, national origin, or age discrimination, the

discussion will not be repeated.

Additionally, no reasonable jury would conclude that AutoZone's negative decision on the CS position created a condition so intolerable that a reasonable person would resign.    Reyes's perception that he was more qualified than those chosen for the position is a common workplace scenario, but Reyes's subjective view of unfairness does not govern a claim of constructive discharge. These allegations of unfairness do not rise to the level necessary to establish the outrageous and intolerable conditions of employment required for a showing of constructive discharge.

### G.   Other Claims

Reyes's Brief in Opposition to Summary Judgment did not discuss the allegations in his complaint concerning retaliation, the ERA, and/or the aiding and abetting claim under the PHRA.    Those claims are, therefore, considered abandoned.    Also, having failed to meet his burden of proof on any of his allegations of discrimination, it is not necessary to address the propriety of the Ellerth/Faragher affirmative defense asserted by AutoZone.

### H.   Conclusion

For the reasons stated, AutoZone's motion for  summary judgment(Docket No. 31) be granted. An appropriate Order will be entered.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


JAMIE A. REYES,                    )
          Plaintiff,               )
                                   )
               v.                  )      Civil Action No. 08-847
                                   )
AUTOZONE, INC., MIKE               )
ELLIOTT, GENE JOHNSON, and         )
BILL WHITED                        )
          Defendants.              )


ORDER

AND NOW, this 2nd day of December, 2009, for the reasons set forth in the foregoing memorandum,

IT IS ORDERED that the defendants' motion for Summary Judgment (Docket No. 31) is GRANTED.


s/Robert C. Mitchell
Robert C. Mitchell
United States Magistrate Judge

31